STATE v. ELLIOTT CAULDER, CHARLIE C. HARRIS, LIZA CLEATON.

(Filed 16 December, 1959.)

**1. Riot § 2—**

Evidence tending to show that defendants were members and leaders of a large group which gathered outside the gates of a mill during the progress of a strike, that both defendants had rocks in their hand and that rocks and missiles were thrown at cars carrying workers from the mill, etc. *is held* sufficient as to each defendant to be submitted to the jury on the charge of riot.

**2. Same—**

An indictment charging that defendants did unlawfully assemble on

a public street, bearing weapons, with the mutual intent to aid and assist each other against lawful authority and others who opposed them, etc., sufficiently charges an unlawful assembly constituting an essential of the offense of riot.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants Elliott Caulder and Charlie C. Harris from *Mallard, J.,* at May 25, 1959 Special Term, of VANCE.

Criminal prosecution upon a bill of indictment charging substantially the following: That Elliott Caulder, Charlie C. Harris and Liza Cleaton, on 12 May, 1959, with force and arms at and in Vance County, unlawfully, willfully, violently, riotously, and tumultuously, together with a large crowd numbering 30 or more persons, did assemble and gather together upon a public street in the city of Henderson, bearing weapons consisting of pocket knives, bricks and stones, making loud noises and with loud voices to the terror of the good citizens residing, and being so assembled, did then and there with the mutual intent to aid and assist each other and others assembled against lawful authority and those who opposed them, did then and there violently throw and hurl such weapons as bricks and missiles at persons and automobiles, lawfully traveling upon the public street, violently striking the same and inflicting damage thereto which continued for a period of 15 minutes or more and did thereby unlawfully engage in riot against the form of the statute in such case made and provided and against the peace and dignity of the State.

Plea: To the charge placed in the bill of indictment, the defendants, and each of them, come into open court and entered a plea of not guilty.

Upon the trial in Superior Court the State offered testimony of officers of the city of Henderson and Vance County tending to show substantially the following: On the night of 12 May, this year, a strike was on at the Harriet South Mills. And officers of the law, just a few minutes before 11 o'clock, the hour for working shift to change at the Harriet Mill were in an automobile close to the intersection of Rose Street (or avenue) and Alexander Avenue, half a block from the mill gate. They saw defendants Harris and Caulder. Caulder was behind the second house on the left of Rose Avenue (that is, east of it). He was telling the officers to turn out the spot light on the car. He said "Turn out that light; if you don't I am going to knock it out and if you want to get anybody, come on over here and get them; turn that light out of my face;" he was up in the yard of the house. He went back to the sidewalk. A few seconds after that the first workers' cars started coming by going west on Alexander Avenue; the

workers coming out from the mills. Officer H. U. Watkins testified: "The next thing that I noticed Harris and Caulder doing was running across Rose Street * * * Mr. Caulder and Mr. Harris ran up the street, and Mr. Harris said 'Come on; come on.' A crowd was following them and they were in the lead. They ran up the sidewalk that was adjacent to the street. About 25 or 30 people were behind him * * * From where I first saw them, they ran about 50 yards. Over that 50 yards Caulder and Harris were running * * * ahead of the crowd and Mr. Harris was saying 'Come on, let's get them,' and Caulder was running with him and said 'Run, run, there is no one up here.' Caulder also said, 'Let's get them, come on up here and let's get them' * * * As they went by the front of the car lights, across Rose Street, I could see that Mr. Harris had rocks in his hands and also Mr. Caulder. The workers were going up the street, and we pulled on up to the intersection and turned in the direction they were running. The workers from the east and going west on Alexander Avenue; they were coming from the mills. We got in the line of traffic with the workers and as we were heading west we had full view of Mr. Harris and Mr. Caulder on the sidewalk in our headlights. The crowd at that time was coming along about even with the car. Harris and Caulder were about 40 or 50 feet ahead of the crowd at that time. Mr. Harris got in a position to throw a rock when one car come by; he had a rock in his hand; he did not throw * * * at that time. He repeated the same thing when the next car come by. He made that motion twice before he threw the rock at the cars. I saw the rock leave his hand and I heard the rock hit, and I heard one of them say, 'Damn, I did not see which car it hit * * * I don't know what part of the car it struck.' Caulder was right behind Harris * * * Caulder and Harris were on the sidewalk on Alexander Avenue west of Rose Street when Harris threw the rock. The mob of people were heading west on the sidewalk behind them so to speak and we were riding along beside this mob. The mob was hollering and yelling 'Get them, let's get them.' The mob did not leave the sidewalk. When Harris threw the rock, Mr. Watkins stopped the car right beside of him and I left the car, rolled right out, and Mr. Harris saw me and ran * * * I chased him up the sidewalk * * * I caught him * * * and he said: 'I am not going to run any more.' I placed him under arrest."

Officer Raynor testified: "I know Lizzie Cleaton; I saw her that night. We came up Rose Street approaching the area of the mill. Officers Reaves, Bobbitt, Ellis and Alvin Byrd were with me. Officer Reaves was driving. As we approached we never did stop on Rose Street; as we were coming out of Rose Street into Alexander Avenue, Elliott Caulder came down the sidewalk. He was at the edge of the

sidewalk as if he would step over into Rose Street and he made the remark that 'Here is these damn yellow bellied scabs, if I had my gun I would kill every damn one of them.' He was looking at us. He was close enough to us that he could have touched our car at that time. Me and Officer Bobbitt got out and arrested him and put him in the police car. By that time Mrs. Cleaton and, I would say, 35 more people ganged up there at the car. Lizzie Cleaton was in the mob. As she walked up she said, 'Get them damn scab setters.' She actually called me by name. * * * When I first recognized her she came down the sidewalk up to the car with the mob of people. She was down in the front of them coming down." Later Raynor testified: "Lizzie Cleaton was hollering 'Get them, let's get them.' The hollering lasted for several minutes."

And J. B. Bobbitt, a police officer, testified: "I also saw Lizzie Cleaton there. She was up at the front of the crowd. It was at this time that Mrs. Cleaton cursed Officer Raynor and said that we were all s. o. bs. * * * The whole group was pretty excited."

On cross-examination Officer Bobbitt testified as follows: "Lizzie Cleaton wasn't arrested that night * * * When I saw her that night she was about 10 feet back of Caulder in a group of people. * * * I never heard Lizzie Cleaton say anything until we had put Caulder in the car. I didn't see any of the defendants do anything, but I heard her say, 'Get your guns and shoot them', * * * she was just urging the people to get us."

The case was submitted to the jury upon the evidence offered by the State, and that offered by the defendants, under the charge of the court.

Verdict: The jury, for their verdict, say as to each of the three defendants guilty of the crime of riot as charged in the bill of indictment.

Judgment: (1) As to defendant Elliott Caulder— Confinement in the common jail of Vance County for a period of eight (8) months, and assigned to work under the supervision of the State Prison Department.

(2) As to defendant Charlie C. Harris— Confinement in the common jail of Vance County for a period of twelve (12) months and assigned to work under the supervision of the State Prison Department.

Appeal to Supreme Court by defendant Elliott Caulder and by defendant Charlie C. Harris is noted in open court,— assigning error.

*Attorney General Seawell, Assistant Attorney General Bruton for the State.*

*W. M. Nicholson, James B. Ledford, L. Glen Ledford, James J. Randleman for defendant appellants.*

WINBORNE, C. J. Appellants state in their brief only one question as being involved on this appeal. That is: Did the trial court err in denying the defendants' motion for judgment as of nonsuit as to each of them at the close of the State's evidence and renewed at the close of all the evidence. Exception No. 1.

In this connection it is noted that the bills of indictment in case No. 364, *S. v. Moseley, et al, ante,* 285, and in case No. 365, *S. v. Rose, et al., ante,* 281, charge the same offense, riot, as that charged against defendants in case in hand, No. 361, *S. v. Caulder, et al,* and, hence, the same principles of law are applicable in all three cases. And applying these principles in the instant case, the evidence here offered, taken in the light most favorable to the State, is abundantly sufficient to take the case to the jury and to support the verdict of guilty rendered as to appellants.

Moreover, in this Court each of defendant appellants files a motion in arrest of judgment entered as to him in this cause, No. 361, for that the Bill of Indictment upon which the defendants were tried is fatally defective for the reason that it fails to aver that the group of persons, of which the defendants were allegedly members, unlawfully assembled, and therefore fails to allege an essential element of the crime of engaging in a riot. Like motions were filed in No. 365, *S. v. Rose, et al, ante,* 281 and there, after full consideration, the motion was denied. And, too, in No. 364, *S. v. Moseley, et al, ante,* 285, like motion was entered and, upon authority of *S. v. Rose, supra,* was denied. Now, here, it appearing that the bills of indictment in the three cases are identical in substance, the motion here is denied upon authority of the decisions there.

Therefore, in the judgment from which appeal is taken there is No error.

HIGGINS, J., took no part in the consideration or decision of this case.